89 So.2d 471 (1956)
Louis MONCRIEFF et al., Plaintiffs-Appellees,
v.
James P. LACOBIE et al., Defendants-Appellants.
No. 4239.
Court of Appeal of Louisiana, First Circuit.
June 29, 1956.
Rehearing Denied September 24, 1956.
*472 Durrett & Hardin, Baton Rouge, for appellants.
H. Alva Brumfield, Baton Rouge, for appellees.
*473 TATE, Judge.
This is a personal injury suit. Defendants appeal from judgment in favor of plaintiffs.
Plaintiffs' car was turning left into a street and was struck from the rear by defendants' truck. This truck was driven by defendant Penick in the course of his employment with co-defendant Lacobie. Plaintiff Marguerite Moncrieff sustained personal injuries as a result of the collision. Co-plaintiff Louis Moncrieff was not a passenger in the automobile driven by his wife but seeks to recover the cost of automobile repairs and of medical treatment of his wife.
The only witnesses testifying to the accident were the two drivers and a bystander. The site of the accident was the T-intersection of the gravelled Sora Street with the paved, two-lane Baton Rouge-Baker highway. Both vehicles were proceeding south along this latter highway, which at the place of the accident passes through an inhabited area rather than open country.
According to plaintiff driver, she flicked her directional signal light (indicating the left turn intention on the front and back of her automobile), either a block or one-half block before her intended left turn into Sora Street, and while slowing she rolled down the window and (although there was a drizzling rain) placed her left hand out, drawing to a complete stop at the intersection. She had looked in her rear view mirror and saw two or three cars stopped or stopping behind her, but not defendants' panel truck. She waited until three cars in oncoming traffic had passed, then commenced turning left; the rear of her car was struck by defendants' truck as she had almost completed her turn.
This testimony is corroborated to some extent by that of a bystander who saw plaintiff slow and stop for oncoming traffic, who also saw the traffic slowing and stopping behind her, and who saw her front directional signal light indicating a left turn. He did not see the accident itself because after observing the foregoing, he heard his telephone ring and was answering same when the accident happened.
Plaintiff's testimony is further somewhat corroborated by the physical facts of the accident, which show that the left rear of her vehicle was struck by the left front of defendants' truck.
Such testimony, accepted by the trial court, supports recovery by plaintiffs. See Kelly v. Neff, La.App., 14 So.2d 657; Goynes v. St. Charles Dairy, Inc., La.App. 1 Cir., 197 So. 819; Overstreet v. Ober, 14 La.App. 633, 130 So. 648.
In urging reversal, defendants rely on the testimony of their driver that without signal plaintiff made a sudden left turn across his path, as he commenced to pass her car at the intersection. Although such driver's conduct in attempting to pass at an intersection in violation of the statutory prohibition, LSA-R.S. 32:233, subd. E, was in itself clearly negligent, Hollabaugh-Seale Funeral Home v. Standard Accident Ins. Company, 215 La. 545, 41 So.2d 212 defendants ably argue that contributory negligence on the part of plaintiff driver defeats recovery, relying on such cases as Vigilant Insurance Co. v. Lumberman's Mutual Casualty Co., La.App. 1 Cir., 85 So.2d 87; La Barre v. Booth, La.App. 1 Cir., 84 So.2d 626.
But the District Court's acceptance of the contrary factual testimony precludes application of such cases. The present situation is distinguished therefrom, since in the present case plaintiff driver did not turn across the immediate path of defendant's driver, without affording him adequate warning.
While the Legislature has provided that a vehicle before turning on a highway shall ascertain that there is no traffic approaching from either direction which will be unduly delayed by the turn, LSA-R.S. 32:235, *474 and has further provided that such driver shall signal a left turn by extending his left arm horizontally, LSA-R.S. 32:236, it has also provided, LSA-R.S. 32:237, subd. B:
"The driver of a vehicle approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection and turning therein to the left across the line of travel of his vehicle; provided, the driver of the vehicle turning left has given the signal required by R.S. 32.236." (Italics ours.)
As stated in Kelly v. Neff, La.App., 14 So.2d 657, at page 660, "a motorist who desires to make a left turn on a city street is not required by law to wait until there is no traffic in sight before attempting to do so."
Defendants further argue that plaintiff driver's own testimony proves she was contributorily negligent because, after looking in her rear view mirror and seeing the traffic in back of her, she waited for the oncoming traffic to pass and then failed to look and see defendants' overtaking vehicle before turning. Since plaintiff driver had seen the intervening traffic stopped and slowed behind her, waiting for her to turn, we do not believe she was under any duty to anticipate that defendants' driver would violate his statutory duties and attempt to pass the stopped traffic at the intersection while plaintiff was in the process of completing her left turn, which turn had temporarily been delayed by heavy traffic approaching from the other direction.
As to quantum, defendants suggest that the medical testimony indicates that it is impossible to state with absolute positivity that the accident was the cause of the miscarriage, since other causes may have intervened; therefore plaintiff has not proved with sufficient definiteness a causal connection between her miscarriage and the accident. However, such medical testimony further indicates that if no other trauma was sustained than the accident (and plaintiff testified without contradiction that there was no other such trauma), then the trauma sustained by plaintiff Marguerite Moncrieff in the accident caused or was a contributing factor to her subsequent miscarriage. (Tr-32, 40, 41.) We feel that the trial court's award to her of $2,500 is not manifestly excessive, for her pain, suffering, and disappointment experienced by reason of the miscarriage, and for other incidental injuries such as a temporary thoraco-lumbar strain.
Although the proven cost of repairs to Louis Moncrieff's car caused by the accident was indeed in the amount of $177.47 awarded him by the District Court, defendants contend that this amount should be reduced to $50, since in excess thereof was paid by Moncrieff's collision insurer. (The insurance policy or any subrogation assignment are not in evidence.) However, the insurer is not a necessary party in an action by its insured against a third party tortfeasor, and a recovery by the insured of the entire damage sustained will be upheld, even though the insurer has paid and has thereby become subrogated to part of the aforesaid damages, Hanton v. New Orleans & C. R. Light & Power Co., 124 La. 562, 50 So. 544; Franz v. N. O. Coffee Co., Ltd., 8 La.App. 445; Ayres v. Wyatt, La.App., 185 So. 84.
In this latter case it is stated, quoting earlier jurisprudence with approval, 185 So. at page 87:
"`[T]he rule is well settled that the suit is properly brought in the name of the person whose property has been destroyed. If he recovers a sum which, with the amount he has received from the insurers, is more than his whole loss, the excess belongs to the insurers, and he receives it as trustee for them. The wrongdoer is bound to respond in damages for the whole *475 loss to the owner of the property, and how the money recovered is to be distributed does not concern him.'"
Thus, while the collision insurer also may if it chooses bring an independent action for recovery of damages paid to its insured against the third party tortfeasor by virtue of its legal or conventional subrogation, Resolute Fire Insurance Company v. Doucet, La.App. 1 Cir., 51 So.2d 143, Automobile Insurance Co. of Hartford v. Barnard, La.App., 30 So.2d 142, the third party tortfeasor is without standing (in the absence of prejudice to himself) to question the right of the insured to bring suit and to recover the entire damage caused by the tort, even though the latter's insurer (as between these two parties) may have a beneficial right by virtue of subrogation to part of said recovery.[1]
Defendant correctly urges that the medical expenses allowed plaintiff Louis Moncrieff for treatment for his wife, co-plaintiff herein, are excessive in the amount of $75, the gross cost of the examinations by and X-rays for Dr. F. C. McMains, which were for the purpose of litigation and not for medical treatment and therefore are not recoverable, see Cummings v. Albert, La.App. 1 Cir., 86 So.2d 727, 731.
For the foregoing reasons, the judgment below in favor of plaintiff Louis Moncrieff will be reduced by the sum of $75 (i. e., to $371.47), and affirmed, as thus amended; and the judgment in favor of plaintiff Moncrieff is fully affirmed in all respects.
Affirmed.
NOTES
[1] Neither may the tortfeasor question the division of proceeds between insured and collision insurer in suits brought against him jointly by both of them, Troy v. Lanclos, La.App., 1 Cir., 85 So.2d 70, John M. Walton, Inc., v. McManus, La.App., 1 Cir., 67 So.2d 130. Nor may such third party question the right of a collision insurer to collect the entire damage sustained, even though the insured has an interest in the $50 or other deductible portion, when such insurer institutes suit by virtue of a subrogation of the entire claim, to said insurer. General Exchange Insurance Corporation v. Keans, Inc., La. App., 1 Cir., 184 So. 410; General Exchange Insurance Corporation v. Carp, La.App., 1 Cir., 176 So. 145.